T. WATLAND and W. H. Robbins, Appellants, v. NORTH DAKO-TA WORKMEN'S COMPENSATION BUREAU, Respondent.

(225 N. W. 812.)

304

Opinion filed June 6, 1929.

*L. J. Palda, Jr., C. E. Brace* and *Robert W. Palda,* for appellants.

*James Morris,* Attorney General, and*Thomas Burke,* Assistant Attorney General, for respondent.

BIRDZELL, J. This is·an appeal from an order sustaining a demurrer to a complaint. The demurrer challenged the complaint as to the jurisdiction of the person of the defendant and the subject of the action and as to a defect of parties defendant; also, on the ground that it did not state facts sufficient to constitute a cause of action. The action is

against the North Dakota Workmen's Compensation Bureau, defendant. The complaint is dated in April, 1925, and charges the defendant to be a bureau in the department of agriculture and labor of the state of North Dakota, created by chapter 162, Session Laws of 1919. It alleges that at the time this act went into effect and for some years prior thereto the plaintiffs, together with one Hrabe, had been and then were copartners conducting the business of buying and selling grain and grinding feed under the firm name and style of Independent Grain Company at Knox, North Dakota; that after the passage of the act, which for brevity we will refer to as the Workmen's Compensation Act, and before the date on which it became operative, the partnership agreed that they would comply with the terms of said act and pay the premium which might be fixed by the bureau; that they were thereafter and at all times ready, willing and able to pay the premium which might be required of them as soon as the bureau should notify them of the amount thereof and demand payment; that they directed the manager of their business to remit the premium as soon as the partnership should be notified of the amount thereof; that shortly after July 1, 1919, when the act went into effect, having received no notice of the amount of the premium due and no demand therefor, the copartnership wrote to the bureau, requesting that proper blanks be sent and that they be notified of the amount of premium due; that soon thereafter they received from the bureau certain blanks which they were required to fill out as a basis for fixing the rate of premium required to be paid by them; that said blanks were duly and properly filled out, executed and properly mailed to the bureau. The copartnership, believing that they would receive notice from the bureau as to the amount of premium to be paid, directed the manager to remit the premium as soon as notice of the amount thereof should be received from the bureau; that the copartnership believed they were at all times thereafter fully insured; that thereafter in November, 1919, one of the plaintiffs and copartners, Watland, inquired of the manager as to the amount of premium paid and then learned for the first time that no demand had been made for said premium and that it had not been paid; and he thereupon wrote and duly mailed a letter to the bureau inquiring the amount of premium due and again instructed the manager to remit as soon as the bureau notified him of the amount, and

that thereafter the copartnership fully believed they were insured under the act; that on or about February 11, 1920, the bureau notified the copartnership of the amount of premium due and on or about the 12th day of February, 1920, the amount so demanded, to wit, the sum of $52.16, was remitted; that on or about February 2, 1920, one Dushek was injured while on the premises of the copartnership; that he thereafter filed a claim for compensation with the said bureau and proceedings were had in which the bureau held the copartnership not insured, but made an award of compensation against the copartners in the amount of approximately $2,500; that thereafter the copartners denied liability on the ground that the injury sustained by Dushek was not sustained in the course of any employment by them; whereupon Dushek brought action in the district court of Benson County upon the award and later recovered a judgment thereon with 50 per cent penalty; that this judgment upon appeal was modified by striking therefrom the penalty and then affirmed (State ex rel. Dushek v. Watland, 51 N. D. 710, 39 A.L.R. 1169, 201 N. W. 680); that during the pendency of said litigation the said Hrabe was adjudged a bankrupt and by reason of his bankruptcy the plaintiffs were compelled to and did pay the judgment as modified in the full sum of $3,000; that by reason of the facts alleged and by reason of the holding of the bureau that the copartners were not insured, the plaintiffs were damaged in the sum so paid with interest from the 21st day of February, 1925.

In support of the contention that the defendant is a corporation or a quasi corporation and as such an entity subject to suit, the appellants cite many cases in this court where questions have been adjudicated between claimants on one side and the bureau on the other. These cases, however, upon examination, will be found to be cases where appeals had been taken from decisions of the bureau disallowing claims. Appeals from such decisions are specifically authorized by § 17 of the act (Sess. Laws 1919, chap. 162) in the following language:

". . . Provided, however, in case the final action of such Bureau denies the right of the claimant to participate at all in the Workmen's Compensation Fund, on the ground that the injury was self-inflicted, or on the ground that the accident did not arise in the course of employment, or upon any other ground going to the basis of the claimant's

right, then the claimant, within thirty (30) days after the notice of the final action of such Bureau, may, by filing his appeal in the district court for the county wherein the injury was inflicted, be entitled to a trial in the ordinary way. In such a proceeding, the state's attorney of the county without additional compensation, shall represent the Workmen's Compensation Bureau, and shall be notified by the clerk forthwith of the filing of such appeal.

"Within thirty (30) days after the filing of his appeal, the appellant shall file a petition in the ordinary form against such Bureau as defendant, and further pleadings shall be had in said cause, according to the rules of civil procedure, and the court shall determine the right of the claimant; and if it determines the right in his favor, shall fix his compensation within the limits prescribed in this act; and any final judgment so obtained shall be paid by the Workmen's Compensation Bureau out of the Workmen's Compensation Fund in the same manner as awards are paid by such Bureau."

The act further provides for the payment of costs and for the right to prosecute error as in ordinary civil cases. Clearly, cases in which appeals have been taken in accordance with the above procedure furnish no precedent for the bringing of an original action against the bureau to recover damages on account of the neglect of the officers charged with the administration of the fund. The mere fact that the legislature saw fit to make a provision whereby the judgment of the bureau as to the validity of a claim should not in all circumstances be controlling is not an indication of a legislative purpose to subject either the fund or the state to the hazard of a liability for negligence in the conducting of official business. This seems so obvious as to require no further elaboration.

The last case in which this court had occasion to consider the legal status of a state commission placed in charge of a fund, created through compulsory assessments to accomplish some governmental object more or less directly favorable to a class of citizens, was that of Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524. That case involved the status of the Guaranty Fund Commission and in it were considered the former decisions of the court bearing upon the question either directly or by analogy. The general conclusion was reached that a

suit against the Guaranty Fund Commission, as to matters pertaining to the exercise of judgment by it, was in effect a suit against the state and that, in the absence of a legislative expression indicating a purpose to subject administrative or executive judgment to judicial review or control, the officers in question were not subject to suit. True, in drawing an analogy between the Workmen's Compensation Fund and the Guaranty Fund, and in at least partial explanation of the cases arising under the former, it was said (page 626 of the state report) : "With reference to the Workmen's Compensation Fund the statute expressly authorized suit to be brought against the officers charged with the duty of administering the law." This expression is not entirely accurate. As already indicated, the act authorized appeals in certain cases and not original actions. The thought in mind when the above expression was used was whether or not any method had been provided whereby there might be judicial review of the decisions of administrative officers, bureaus or commissions It is one thing to provide a measure of judicial review by way of limited appeal from decisions and quite another matter to recognize a bureau or commission as a legal entity and hold it subject to suit generally. For the reasons which are elaborated in the case of Wirtz v. Nestos et al., supra, and which need not be reiterated here, the Workmen's Compensation Bureau may not be regarded as a legal entity for purpose of suit, and a suit against it is in legal effect a suit against the state.

This narrows the inquiry on this feature of the demurrer to the question, Has the state consented to be sued? The answer is, Clearly no. The state cannot be sued without its consent. There is no authority in the act in question to sue it. It is necessary, then, to refer elsewhere for such authority. The consent of the state to be sued is found in § 8175, Compiled Laws of 1913, which reads: "An action respecting the title to property, or arising upon contract may be brought in the district court against the state the same as against a private person. When such actions are not of a local nature they shall be brought in the county of Burleigh."

This is not an action upon contract. It is an action whereby the defendant is sought to be held liable in damages for neglect of official

duty. There is no such provision for suit in the Workmen's Compensation Act as is contained, for instance, in the Mill and Elevator Act. See Bakken v. State, 56 N. D. 861, 219 N. W. 834.

Various reasons might be given in support of the policy evidenced by the above statute wherein the state, by implication, withholds its consent to be sued as for a tort. A case such as the one at bar indicates one of the most obvious reasons. It might result in the dissipation of a fund raised for a particular purpose by requiring it to be applied in the liquidation of liabilities in favor of others than those for whose benefit the fund is created. Either that, or it would impose upon the general taxpayers a liability for official neglect that is equally grievous regardless of the governmental department in which the neglect occurs. See Rauschan v. State Comp. Ins. Fund, 80 Cal. App. 754, 253 Pac. 173.

Additional reasons why the demurrer was properly sustained will readily occur upon an examination of the complaint; such, for instance, as that the original compensation act dated the protection to the employer from the time of the payment of the premium, and employers are charged, of course, with the knowledge of the law. Likewise, it dated the right of the employee to participate in the fund from the time of such payment. See State ex rel. Dushek v. Watland, 51 N. D. 710, 39 A.L.R. 1169, 201 N. W. 680.

The demurrer was properly sustained and the order must be affirmed.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.